**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

FREDRICK DANIEL RODRIGUEZ                                        PLAINTIFF

v.                                        4:10-cv-00147-DPM-JTK

BRUCE PENNINGTON, et al.                                        DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P.

Marshall Jr.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing before the District
         Judge (if such a  hearing is granted) was not offered at the
         hearing before the Magistrate Judge.

1

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.   Introduction

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 62).   Plaintiff filed Responses to the Motion (Doc. Nos. 73, 76), Defendants filed a Reply (Doc. No. 77), and Plaintiff filed a third Response (Doc. No. 78).   Plaintiff filed a Notice of Change of Address on April 13, 2011, indicating his release from incarceration (Doc. No. 79), together with a motion for extension of time to file a supplemental response, stating an attorney would review his case (Doc. No. 80).   The Court granted Plaintiff thirty additional days to respond, by Order dated April 19, 2011 (Doc. No. 81).   Plaintiff did not file an additional response to the Motion.

Plaintiff Rodriguez filed this action pursuant to 42 U.S.C. § 1983 while incarcerated at the Saline County Detention Center (Jail), from December 4, 2009 until his transfer to the Arkansas Department of Correction (ADC) on June 20, 2010.   Plaintiff alleges Defendants Sheriff Bruce Pennington, Dr. Phillip Snodgrass, and Lt. Ray Pennington, violated his Eighth Amendment right by failing to adequately treat several medical conditions.   Plaintiff also alleges a violation of his

constitutional rights due to Defendants' refusal to grant his request to be placed on house arrest. Plaintiff asks for monetary and injunctive relief from the Defendants.

## II.     Plaintiff's Complaint

In his Complaint, Plaintiff states he broke his ankle when jumping off a top bunk at the Jail about December 6, 2009, and that he was not seen by medical personnel for three days thereafter. At that time he was given Naproxen and pain pills.  He further alleges that a later x-ray showed that his ankle was broken.  He was taken to the hospital later in the month, and Dr. Lorio at the hospital looked at his x-ray and told him his ankle was broken and should be re-broken and re-set.  Another doctor at the hospital also told the duty officer to return Plaintiff for a sleep study.  On January 27, 2010, Plaintiff filed a complaint with the Jail stating he had filed a grievance and medical request once a week in January, with no response.  Plaintiff did state that the doctor at the Jail gave him medications.

## III.    Summary Judgment Motion

### A.     Defendants' Motion

#### 1.     Plaintiff's Medical History

In support of their Motion, Defendants provide the affidavit of Defendant Snodgrass, together with copies of Plaintiff's medical records (Doc. No. 62).  According to these documents, Plaintiff submitted a request on December 6, 2009, complaining about an ankle injury (Doc. No. 62-4).  Dr. Snodgrass then examined Plaintiff on December 8, 2009 and diagnosed him with a sprained ankle, instructed him to elevate his ankle, and prescribed him an ankle brace and anti-inflammatory and pain medications.  Id.  Plaintiff returned on December 12, 2009, complaining about continued pain and swelling of his right ankle (Doc. No. 62-4, 62-5).  Defendant Snodgrass ordered that

Plaintiff be scheduled for transport to Saline County Memorial Hospital for an x-ray of his ankle.
Id.   On December 15, 2009, Plaintiff was taken to the hospital, where the x-ray revealed the
following impression recorded by Dr. Bryan Jennings: "1. A 6 mm avulsion off the tip of the lateral
malleolus is present without significant displacement that may be subacute.   2.   Otherwise
unremarkable right ankle." (Doc. No. 62-7).   Defendant Snodgrass states in his Affidavit (Doc.
No. 62-1, p. 3), that it was his opinion that Plaintiff suffered a minimal fracture and sprain and that
the proper conservative treatment was to continue his original orders of pain and anti-inflammatory
medications, elevation, and use of an ankle brace.

Plaintiff was transported back to the hospital on December 31, 2009, after complaining about
chest pain radiating to his neck and left arm.   (Doc. No. 62-8).   According to his medical records,
Plaintiff was examined by Dr. John Hampton, who noted normal blood pressure, no swelling to
Plaintiff's ankle, a splint on Plaintiff's ankle, and a normal EKG test result.   Id.   He further indicated
the following plan:   "1.  I will go ahead and start the patient on blood pressure medicines consisting
of benazepril and Norvaso.  2.  I will follow cardiac enzymes.  3.  I will check lipids and an alc.  4.
He needs a stress test.  5.  I will also check for HIV, hepatitis-B, and hepatitis-C because of the
patient's history of drug abuse.  6.  I will ask orthopedics to look at his right ankle." (Doc. No. 62-8,
p. 2).   Dr. Hampton then ordered several tests such as an echocardiogram and a cardiac
catheterization.   Id.   He concluded as his final diagnosis: "Chest pain; differential diagnosis remains
chest wall due to esophageal reflux and esophagitis, more conceivably endocardial ischemia related
to a hypertensive episode."   He also noted hypertension, gastroesophageal reflux disease, obesity,
obstructive sleep apnea, "suspected, not confirmed", and dyslipidemia (dyslexia).   Id.   With respect
to the sleep apnea, Dr. Hampton's report stated, "the patient's nurse observed that the patient has

obstructive sleep apnea.  He will be informed of this and I will express to him that losing the weight that he regained probably will cure his sleep apnea.  I will also counsel him about smoking discontinuance." Id.  The discharge instructions were as follows: "will go back to the Benton jail to await further jail time for child support non-payment." Id.  Plaintiff was discharged back to the Jail on January 1, 2010.

Dr. Snodgrass states that Plaintiff did not complain about his ankle again until February 4, 2010 (Doc. No. 62-9).  Dr. Snodgrass examined Plaintiff on February 11, 2010, at which time he maintained his original diagnosis of a minimal injury and continued Plaintiff on his prior treatment. (Doc. No. 62-9).  Plaintiff was seen again on February 23, 2010 for a rash, and Dr. Snodgrass prescribed several medications, including Hydrocodone. (Doc. No. 62-10).  Plaintiff was examined on March 2, 2010 pursuant to a complaint of painful urination, at which time he again complained about pain in his ankle.  (Doc. No. 62-11).  Dr. Snodgrass continued him on pain medication. Id.

Plaintiff again complained about ankle pain when examined for a cough on April 14, 2010 (Doc. No. 62-12), but did not complain when treated on May 4, 2010 (Doc. No. 62-13).  Plaintiff returned to the doctor on May 7, 2010, with continued complaints of ankle pain, at which time Dr. Snodgrass referred Plaintiff to an orthopedic to assess if a more aggressive treatment was warranted. (Doc. No. 62-14).  According to the Affidavit of Jail employee Sgt. Jimmy Lester, at that time Plaintiff was awaiting transfer to the ADC and pursuant to ADC procedure, Lester was required to submit a health services request form to the ADC to obtain approval of Dr. Snodgrass' referral. (Doc. No. 62-16, 62-17).  Lester received permission from the ADC and Plaintiff was examined by the Saline Orthopedic Group on June 7, 2010, and thereafter transferred to the ADC on June 20, 2010. Id.

5

In his Affidavit, Dr. Snodgrass states that after a minimal ankle fracture and sprain, it is not uncommon for the ankle to continue to be painful and tender for several months. He also states that Plaintiff originally was treated conservatively for his injury, and when the pain continued, an orthopedic referral was requested. (Doc. No. 62-1).

### 2.     Defendants' Legal Argument

Defendants state they provided medical care to Plaintiff while incarcerated at the Jail, and he presents no evidence to show they acted with deliberate indifference to his medical needs. In addition, Defendants state Plaintiff's disagreement over the type of medical care provided to him is not actionable under § 1983, and Plaintiff fails to place any verifying medical evidence in the record to support a finding of a detrimental effect as a result of any delay in his treatment. They note that Plaintiff was examined by Defendant Dr. Snodgrass eight times between December 8, 2009 until May 11, 2010, and state Plaintiff cannot show they deliberately denied him medical treatment. Defendants also state the medical records do not support a finding that they ignored directions to provide additional tests for Plaintiff's chest pain and sleep apnea conditions and that his complaints are about the type of treatment he received, which is not actionable. Plaintiff also does not provide any evidence that he was harmed by delays in treatment, according to the Defendants.

Finally, with respect to the house arrest issue, Defendants state they are not responsible for such decisions, which are handled by judicial officers, and therefore, Plaintiff fails to state a constitutional claim against them.

### B.     Plaintiff's Responses

Plaintiff states Defendants are incorrect in their dates. Plaintiff claims he broke his ankle on December 5, 2009 and that he waited four days thereafter before he was examined by Defendant

Snodgrass.   He also disputes that he was seen a second time on December 12, 2009, stating it was December 15, 2009, and further complains that he was required to wait until December 20, 2009 in which to have his ankle x-rayed.   Plaintiff also states he was admitted to the hospital on December 29, 2009, as opposed to December 31, 2009, and complains that Defendants never followed up on Dr. Hampton's recommendations that he receive a stress test and additional therapy on his ankle. He complains that Defendants failed to abide by Dr. Hampton's order that he be returned to the hospital for a sleep apnea study.   Finally, he states that he continued to complain about ankle pain throughout January, 2010, and that he did not receive any treatment or additional pain medication during that time.   Plaintiff denies receiving prescriptions for Tramadol and Hydrocodone until after he filed this lawsuit, in March, 2010.   Plaintiff states all three Defendants could have helped him more by putting a cast on his ankle, and that as a result of their inactions, he suffered pain and suffering.

### C. Defendants' Reply

Defendants note that Plaintiff did not respond to their statement of undisputed material facts, and therefore, the facts should be deemed admitted, pursuant to Local Rule 56.1.   In addition, Defendants state Plaintiff has not submitted any medical evidence to support his claim of deliberate indifference to a serious medical need, resulting in injury.   Citing Crowley v. Hedgepeth, Defendants state Plaintiff's claim should fail because he provides no evidence to show that any delay in his treatment resulted in a detrimental effect.   109 F.3d 500, 502 (8th Cir. 1997).

### D. Standard of Review

Pursuant to FED.R.CIV.P. 56(c), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law.  See  Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

      E.     **Analysis**

            1.     **Medical Claims**

During part of Plaintiff's incarceration at the Jail, he was a pretrial detainee.  Therefore, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of pretrial detainees' conditions of confinement.  The standards applied to such claims, however, are the same as those applied to Eighth Amendment claims.  See Bell v. Wolfish, 441 U.S. 520, 535 (1976), and Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994).  In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 827 (1994).  However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  Estelle v. Gamble, 429 U.S. 197 (1976).  Rather, the "prisoner must show

more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).  Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d  761, 765 (8th Cir. 1996).  In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995).  Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Having reviewed Plaintiff's Complaint, Defendants' Motion, and the evidence provided in support, the Court finds no dispute of fact concerning the medical care and treatment provided to the Plaintiff by Defendants, and that Defendants are entitled to judgment as a matter of law on Plaintiff's claims against them.  The medical records show that Defendant Snodgrass treated Plaintiff on numerous occasions for his complaints of ankle pain.  The records also show that Plaintiff was treated for his chest pain complaints and others, and any disagreement over Defendants' failure to arrange for tests mentioned but not mandated by the hospital doctors does not support an Eighth Amendment claim.  See Long v. Nix.  Although Plaintiff disputes the dates set

forth by the Defendants, the Court does not find this to be a dispute of material fact.  Plaintiff simply

provides no evidence that Defendants were deliberately indifferent.  As noted above, disagreement

with a course of treatment does not support a constitutional claim, and an allegation of delay in

medical treatment must be supported by medical evidence showing a detrimental effect due to the

delay.  See Smith v. Marcantonio and Beyerbach v. Sears.

### 2.    House Arrest

Plaintiff's complaint that Defendants failed to place him on house arrest fails to state a

constitutional claim.  Plaintiff does not allege that Defendants were authorized to make such a

decision, and he does not establish that his due process or other constitutional rights were violated

by his pre-trial incarceration at the Jail.   To establish that his conditions of confinement violated

the Eighth Amendment, Plaintiff must show that "the alleged deprivation is, 'objectively,

sufficiently serious' resulting 'in the denial of the minimal civilized measure of life's necessities,'"

and "the prison officials were deliberately indifferent to 'an excessive risk to inmate health or

safety.'"  Williams v. Delo, 49 F.3d 442,445 (8th Cir. 1995), quoting Farmer v. Brennan, 522 U.S.

at 834.   Absent such allegations by Plaintiff, the Court finds Defendants are entitled to judgment

as a matter of law with respect to this claim.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment

(Doc. No. 62) be GRANTED and that Plaintiff's Complaint against Defendants be DISMISSED

with prejudice.

IT IS SO RECOMMENDED this 17th day of June, 2011.

_____

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE